The PRESIDENT.
The first point which merits our attention, is the objection to the plaintiff’s title, to which two sufficient answers are given, 1st, The non-execution of the deed by the fourth executor, does not appear judicially to the court. The declaration states, that all the executors made the deed. The plea (if it do not admit the fact,) does not deny it, and the verdict which as to this point is to be considered as a general one, confirms it; nor can we consider this fact as being contradicted by the deed which appears in the record. 2dly, The declaration charges enjoyment of the property by the appellants, during the term for which the rent is claimed, which is sufficient to maintain the action, without deciding how far the doctrine of estopples applies to the case.
We ccme next to the merits. The 1st question is, if this contract for rent be subject to be scaled at all, under the 2d ^section of the act of 1781: and if it be, then, 2dly, whether it be within the 5th section of that law, so as to warrant the court in adjusting it upon equitable principles. 3dly, Whether the mode of adjustment be a proper and legal one.
1st, It may be premised, that the law in question, tho’ rendered necessary by the peculiar situation of this country, at that time, was certainly retrospective in its operation, and the subject was of an extremely delicate nature.
The objection is, that the act meant only to respect temporary contracts, which might probably be fulfilled during the existence of paper money, and which the parties could not contemplate to continue forever: that of course, the legislature did not mean to scale rents payable annually, and for an interminable course of time, when even the remembrance of paper money might be retained. There is certainly considerable weight in the argument. On the other side it is contended with much strength, that the legislature in fixing the scale at the time of the contract, and not at the time or times of future payments, seem to have supposed, that the price was fixed by the idea, which the parties then entertained of the relative value of paper to specie. To govern our enquiries upon this subject by a loose comparison of the rent, with the thing for which it is to be paid, would prove quite unsatisfactory — £78 for three quarters of an acre of naked ground, may appear as high in specie, as that sum in paper money, reduced by the scale to A3: 10, is unreasonably low. Our safest and only guide is to pursue the words of the law, which plainly include this case, being a contract for payment of current money at future days. The act is general, and not limited as to portions of time, nor can the court draw a line between a contract for payment at the end of two days or of twenty years or more. The act excepts the cases of contracts for gold or silver coin, tobacco, or other specific property, and if it be true, that an exception proves the rule, we must decide that all other contracts are within the law. The objection that one payment would discharge the whole contract, was well answered by the appellant’s counsel, when he observed, that the discharge, was meant to be coextensive with the payment only, and not to effect demands becoming due at future days, by the same contracts.
2dly, Although the second clause has established a general rule for adjusting contracts, where no particular circumstances intervene, yet the 5th section has allowed the equitable interposition of courts, in cases of particular hardship as, *lst, Where it shall appear that the value of the debt hath been tendered and refused.
*573 2dly, Where it shall appear that the nonpayment is owing to the creditor. Or 3dly, where other circumstances occur which, in the opinion of the court before whom the cause is brought to issue, would render a determination according to the scale unjust. In either case, the law authorises the court to award such judgment, as to them shall appear just and equitable.
It is objected 1st, that the application for this equitable interposition of the court, can come from the debtors only; that the clause under consideration was intended exclusively for their benefit, and not for that of the creditors, and that this was so decided in the General Court. I do not know the cases alluded to, but am persuaded they must have arisen from one of the two branches of the clause, which are clearly intended for the benefit of debtors only; for it would seem strange for any court to determine under the 3d branch of the clause, if circumstances appear which would render the application of the general rule unjust to the creditor, that the court were not at libertj' to give a just and equitable judgment for him, as well as for the debtor, in a similar situation. Such partiality cannot fairly be imputed to the legislature, and it would require strong words to induce such a construction. In this law there is not the slightest ground for it.
Another objection contended for is, that this clause, if construed to apply to creditors, as well as to debtors, would render the second section a mere nullity, and would entirely destroy the effect of the general rule, by leaving the whole subject at large, and to depend upon the various opinions of the different courts. If this would be the case, are the court at liberty to reject a positive law, because its effects may be inconvenient? But how does this differ from the common case of exceptions from a general law? The latter is to prevail in all general contracts, unattended by any particular circumstances, and is to be departed from only when such circumstances occur. Again ; does it not fall within the general system of jurisprudence, which although it fixes rules of decision governing courts of law, allows a departure from them in equity, upon circumstances of fraud or accident ; yet different chancellors entertain different opinions as to the application of those circumstances, and courts of law differ daily in the construction of statutes, deeds and wills. So likewise, juries frequently, in the ‘same cause, and on the same evidence, not to say on the same point, in different courts, give contrary verdicts. Yet this does not furnish a sufficient reason for restraining the different courts, and juries from proceeding to trjr all cases before them.
Upon the whole, we must decide, that the District Court had a power, under this clause, to enquire into the circumstances of this contract, and from a view of them, to determine whether an adherence to the scale in this case would be unjust, either as to the plaintiff, or as to the defendant, and to substitute such other rule, as to them might seem more just and equitable.
But 3dly, How are those circumstances to be brought before the court, and to be decided upon? This is a question of some difficulty.
The 1st method is by a special verdict, stating the facts and circumstances, and leaving it to the court to decide upon them, whether ’the scale should be applied, and if so, whether by the legal rule, or by any other? This seems to be the most proper method as complying strictly with the words of the law, and according with the ordinary modes of trial. Indeed in this case, which is not an action of debt for rent certain, but of covenant for damages to be ascertained by the jury, the jury might upon evidence of the intention of the parties, encrease, or diminish the damages, and these they might find in specie, and so determine the question by a general verdict.
Another method would be, for the court to hear the evidence of those circumstances, on the trial, and to instruct the jury as to the point of scaling, subject to the controul of the court as in other cases, in setting aside the verdict, if their opinion be disregarded ; or perhaps, if the evidence be heard at the trial, and a general verdict given, the words of the law might justify the court in entering a judgment for a sum different from that found by the jury, assigning as, a reason for this departure, that circumstances required a deviation from the legal scale, and the adoption of another for the purposes of justice. But in either case, it would be the business of the party who-is dissatisfied with the opinion of the court, to state the evidence in a bill of exceptions, that so the question might properly be brought before a Superior Court. Whether this mode, or that by way of special verdict, be adopted, the influential circumstances may be proved by parol evidence, and the parties, as to those, are not confined by the written contract. If it were otherwise, the clause would be vain and nugatory; since I cannot conceive, *what circumstances could appear in the contract itself, to induce a departure from the scale, unless the payment is stipulated to be made in specie, or in some specific property, which would at once take the case out of the law altogether.
The scale, it is to be observed, was former subsequent to the destruction of paper money, and on conjecture only; and that drawn from the ideas of mercantile men, not of the bulk of society. The contracts of men should be governed by the comparative value of paper to specie, as they understood it when those contracts were entered into y and if that be more, or less than the rate at which the scale afterwards settled it, the latter ought not to be a rule for them. Circumstances therefore tending to illucidate their ideas upon this subject, collected from their expressions in the treaty, the general opinion of the parties, and of others in the neighborhood at the time, and such like, seem to be what the law contemplates, and' *574 can only be collected from parol testimony. It is loose indeed; but it rests with the judges as in other cases of evidence, to say whether it produces conviction on their minds or not.
The objection therefore is not to the court’s living (in this case) admitted parol proof of the circumstances, but the doubt arises as to the time and manner of that admission. Ror neither of the modes, before stated as proper, have been ' pursued ; but one wholly new, and in my mind ir-reconcileable with every idea of propriety. A jury are sworn, .who find a verdict for the plaintiff, subject to the opinion of the court, whether the money ought to be scaled, and in what manner, under the act of Assembty, without stating a single” fact, or circumstance, to enable the court to decide upon the question. If the court were right in proceeding to judgment on this verdict, they were bound to decide as the case appeared upon the contract itself. And if they judged it to be within the second section, which they appear to have done, they should have scaled it, since no circumstances were disclosed to shew the legal scale to be unjust. Instead of this, after deciding that the contract was within the law, they examine witnesses, and upon their testimony, enter judgment for the whole sum in specie, saying “that it appeared the rent was expected to be paid in specie.”-
This, it is contended, is warranted by the law, which gives-to the court, the power of hearing, and of judging of the circumstances, exclusive of the jury, and that at the time of entering their judgment.
*But 1st, I doubt whether the act does any more than give the court jurisdiction over the enquiry, and whether the trial is not to proceed as in ordinary cases, in which the jury, if they please, may decide. Ror 1st, the words are, “the court before whom the cause is brought to issue” which are proper words to give jurisdiction. 2dly, A jurjr must be, and was sworn to try the issue, and surely, that was the time to bring forward the evidence as to this collateral point, for which both parties ought to be prepared. 3dly, The constitution declares, “that the trial by jury is preferable to all others, and ought to be held sacred.” To go no farther, it may be affirmed, that this mode of trial is never to be taken away by implication, or without positive words in an act of Assembly. Raws for this purpose sometimes give the court an express power to proceed, without the solemnity of a jury; most usually to proceed upon motion in a summary way, by which, the same thing is understood. Of this, there is an instance in this clause, where a power is given to the courts to regulate judgments entered up during the existence of paper money. The different expressions in that, and the part under consideration, operate strongly against the exclusion of the jury from a part in this decision, and against the taking of it out of the ordinary mode of trial.
But 2dly, Suppose the court have the exclusive power 'of decision, surely it must come before them in a regular manner, and at a proper time; that is to say, by way of direction to the jury in case a general verdict be found, or by a judgment given upon a special verdict: or the point might be reserved on a proper state of facts, entered upon the record: none of which have been observed in this case.
I said, that if the court could give judgment on this verdict, it should have been for the money legally reduced, since the contract was within the law, and no circumstances are disclosed to take the case out of the general rule. And strictly speaking, such judgment might perhaps be proper, since enough is found to enable the court to decide upon the face of the contract; and it would seem to be no good reason for awarding a venire facias de novo, that such circumstances are not stated, since it may from thence be presumed that none such were proved to the jury.
However, since the record discovers, that there are circumstances which induced the district judges, to depart from the scale, though now determined to have been improperly brought forth ; the party ought not to be precluded from the benefit of those circumstances *if disclosed in a regular wajr, and the justice of the case will be,best attained, by awarding a venire facias de novo.
Judgment reversed, and a new trial directed.